UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISDENA KIRKLAND, | : |
|     Plaintiff, | : |
| | : |
| v. | : |
| | :    No. 3:10 CV 2037 (WWE) |
| STATE OF CONNECTICUT | : |
| DEPARTMENT OF SOCIAL | : |
| SERVICES | : |
|     Defendant. | : |

## MEMORANDUM OF DECISION ON SUMMARY JUDGMENT

In this action, plaintiff Chrisdena Kirkland asserts that defendant State of Connecticut Department of Social Services discriminated against her in violation of Title VII and the Connecticut Fair Employment Practices Act ("CFEPA") based on her pregnancy, her race and her filing of a complaint with the Commission on Human Rights and Opportunities.[1]

Defendant has filed a motion for summary judgment on the complaint in its entirety. For the following reasons, the motion for summary judgment will be granted.

## A. BACKGROUND

In support of the motion for summary judgment, defendant has submitted statements of undisputed facts, exhibits and affidavits. These materials reflect the following factual background.

The plaintiff is an African American woman, who was hired to work at

---

[1] CFEPA claims are governed by the same standards applicable to Title VII claims. Jamilik v. Yale Univ., 362 Fed. Appx. 148, 150 151 n.3 (2d Cir. 2009). The Court will review the CFEPA claims according to the Title VII framework. Levy v. Comm'n of Human Rights and Opportunities, 236 Conn. 96, 103 (1996); Brittell v. Dep't of Cor., 247 Conn. 148 (1998).

1

Department of Social Services on February 17, 2006. As a new employee, she had a one-year trainee, working test period.

As a trainee, plaintiff was required to complete twenty-one days of training on the basics of eligibility and public assistance programs. After completing this training on May 10, 2006, she began working full time in a unit at the Department of Social Services that was supervised by Mary Jo Creatore.

On March 20, 2006, plaintiff submitted a form entitled, "Employee Request for Leave of Absence Under the Federal Family and Medical Leave Act." On that form, she explained that due to a blood clot in her leg, she was "required to attend regularly scheduled Doctor appointments" that would cause her to miss all or part of her work day. Her FMLA request was denied because plaintiff had not yet worked the requisite hours required by the law, but defendant allowed her to take her time off to attend doctor's visits.

On May 23, 2006, plaintiff's physician faxed a medical certificate to defendant, indicating that plaintiff was pregnant and would be incapacitated once a week, for four- to eight-hours at a time, for phlebotomy services. That day, Dawn Johnson from Human Resources notified plaintiff that the medical certificate was incomplete. After plaintiff submitted an additional medical certificate, defendant permitted plaintiff to take time off to attend her doctor's appointments relative to her pregnancy.

In a memo to plaintiff dated June 29, 2006, Creatore wrote plaintiff that she needed to keep her supervisor informed of her whereabouts when she was gone from her desk, and that she need to make arrangements to leave work when she was not feeling well enough to work. On July 14, 2006, Creatore met with the plaintiff to discuss

the work attendance and tardiness policy.

Plaintiff took an unpaid pregnancy disability leave from July 21, 2006 through December 1, 2006.

On August 16, 2006, plaintiff was notified that, due to her use of sick leave and unpaid leave, her one-year trainee program was being extended by the amount of time she that she had taken off.

That same day, plaintiff was provided with a copy of her Initial Probationary Performance Appraisal that was completed by Creatore. Plaintiff received an overall rating of unsatisfactory. Creatore noted that plaintiff's knowledge of her work was inconsistent; that her work quantity was below average; and that her work quality was often unacceptable. She indicated that plaintiff required a great deal of instruction and that her judgment was less than good.

On December 18, 2006, plaintiff was notified that her one-year trainee working test period would end on July 31, 2007. On June 7, 2007, plaintiff was notified that, due to her attendance record, her working test period would be extended to August 15, 2007.

When the plaintiff returned to work in December 2006, she was sent to the training series for the second time to enable her to improve her work performance. Creatore did not make the decision to send the plaintiff to training for the second time.

Plaintiff attended the second training from December 11, 2006 to January 12, 2007. Upon completion of the training, plaintiff was assigned to take Intake Applications, which required her to interview clients who came to the office to apply for the various adult programs; she was also responsible for processing applications that

were mailed in to the agency. Plaintiff's work was reviewed by her supervisor, Creatore, or the Eligibility Services Specialist, Marilyn Rogers.

On May 2, 2007, the Social Services Operations Manager, Alexis Kiss, sent an email to the supervisors stating that there was an opportunity for overtime and requested that supervisors talk to their staff about the opportunity. Plaintiff responded by email to Creatore and Kiss that she would like to sign up to work overtime. However, Kiss decided not to offer overtime to new workers who did not have a full caseload and who did not have experience with the type of work required. Plaintiff and another new employee, Martha Marchelli, a Caucasian female, were not permitted to work overtime. On April 24, 2007, Creatore issued a formal written warning for tardiness to plaintiff due to plaintiff's three occurrences of tardiness within a thirty-day period.

In May 2007, plaintiff posted a note with a religious message on the outside wall of her cubicle. Another employee also had a note posted on her cubicle. Creatore met with both employees at the same time and advised them that the building guidelines prohibited anything being hung outside of employee cubicles.

On May 24, 2007, plaintiff filed a complaint with the CHRO, alleging that she was harassed, warned, given a poor evaluation and retaliated against because of her race.

On May 25, 2007, Creatore and Kiss met with plaintiff to discuss her performance issues. At the meeting, plaintiff was told that her performance was unsatisfactory and that if she had another unsatisfactory evaluation she would face dismissal. Creatore and Kiss also told plaintiff that there were areas where she needed improvement. They discussed putting into effect a plan to improve the plaintiff's job performance before the next evaluation.

On May 30, 2007, Creatore, Kiss, and plaintiff met to discuss a Work Improvement Plan. As part of the Work Improvement Plan, plaintiff was scheduled to have weekly meetings with Creatore to discuss her progress, identify areas that needed improvement, and answer any questions.

Defendant received plaintiff's CHRO complaint on June 12, 2007.

Creatore issued a second performance appraisal dated July 27, 2007, in which she gave plaintiff an overall rating of unsatisfactory. In the category of Knowledge of Work, Creatore wrote that plaintiff "continues to require considerable supervisory assistance." In the category of Quantity of Work, Creatore noted that the volume of the plaintiff's work was very low for a worker with her length of experience. Creatore indicated that plaintiff's work quality remained inconsistent; that she required a great deal of instruction and was inconsistent in demonstrating her ability to learn and retain knowledge; that she required close supervision and review of her work for accuracy; that she demonstrated reluctance to cooperate; and that she continued to be "inconsistent, illogical and unreliable."

On August 9, 2007, plaintiff was notified that she was being separated from state service effective August 23, 2007. Plaintiff was afforded a hearing on October 3, 2007. On October 22, 2007, plaintiff was notified that her termination would remain in effect.

On March 12, 2009, plaintiff amended her complaint to allege that she was terminated for filing a CHRO complaint.

On May 5, 2010, plaintiff's CHRO complaint was dismissed for no reasonable cause.

## B. DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc., 664 F.2d at 351. In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson, 477 U.S. at 255.

If a nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

1. **Failure to Exhaust**

Defendant maintains that plaintiff's disparate treatment claim based on her termination is barred by her failure to timely exhaust her administrative remedies.

Title VII requires that an administrative charge be filed within 300 days of the alleged unlawful employment practice, 42 U.S.C. § 2000(e)(1); and CFEPA requires that an administrative charge be filed within 180 days of the unlawful employment practice. Title VII's time limits for exhaustion are not jurisdictional and are subject to waiver, estoppel and equitable tolling. Baroor v. N.Y.C. Dep't of Educ., 362 Fed. App'x 157, 159 (2d Cir. 2010). The exhaustion requirement exists to afford the administrative agency the opportunity to investigate, mediate, and take remedial action. Stewart v. United States Immigration and Naturalization Service, 762 F.2d 193, 198 (2d Cir. 1985).

Plaintiff does not dispute that her administrative complaint pertaining to her alleged discriminatory termination exceeded the prescribed time limits. She asserts that her termination claim is subject to waiver or that it is sufficiently related to the prior administrative charge to be deemed exhausted. Plaintiff maintains that a CHRO investigator informed her that she did not need to amend her administrative complaint; that the amended complaint was later deemed by another CHRO investigator to be timely filed; and that the agency's Final Decision determined the merits of plaintiff's termination claim.

The CHRO's treatment of plaintiff's termination claim satisfies the purposes of the exhaustion requirement. Accordingly, the Court finds that waiver of such requirement is appropriate. The Court will not dismiss the termination claim based on failure to exhaust.

## 2. Disparate Treatment and Retaliation

The Court analyzes plaintiff's claims of disparate treatment and retaliation according to the burden shifting process established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981).

### a. Discrimination Based on Pregnancy and Race

To establish her prima facie claim of discriminatory treatment based on her pregnancy and race, plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Although the plaintiff's initial burden is not onerous, she must show that the alleged adverse employment action was not made for legitimate reasons. Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. 81, 86 (D. Conn. 1998).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). Plaintiff may raise an inference of discrimination by showing that her employer treated her less favorably than similarly situated employees outside her protected class for a similar offense. Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). However, in this context, plaintiff must demonstrate that these comparators are similarly situated in all material respects and have "engaged in

8

comparable conduct." Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997).

Plaintiff alleges adverse discriminatory conduct including written warnings, monitoring, failure to give her a full caseload, negative performance appraisals, denial of overtime, failure to include her in the holiday party, instructing her to remove a religious quote from her cubicle, certain verbal remarks—including calling plaintiff defiant, naive, illogical, less than good and a square peg in a round hole and instructing her not to associate with minorities—and termination.

Defendant argues that many of these alleged actions do not constitute materially adverse employment action, which must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Patrolmen's Benevolent Ass'n of New York, Inc. v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002). For purposes of ruling on this motion, the Court assumes that plaintiff has alleged adverse employment action with the exception of the alleged exclusion from the holiday party and the verbal remarks. Defendant's failure to ensure plaintiff's participation in the holiday party represents a petty slight or minor annoyance that cannot form the basis of a Title VII claim. Burlington Northern v. White, 548 U.S. 53, 68 (2006). The alleged remarks calling plaintiff defiant, naive, illogical, less than good and a square peg in a round hole do not indicate a discriminatory animus against plaintiff based on her race or pregnancy because they are not related to plaintiff's protected status and plaintiff has not established any nexus between such remarks and the alleged discrimination. See Rolon v. Pep Boys–Manny, Moe & Jack, 601 F. Supp. 2d 464, 468 (D. Conn. 2004). However, the Court will consider the alleged instruction not to associate with minorities

9

in its evaluation of plaintiff's claim of disparate treatment because it allegedly concerns race.

As to the remaining claims of discriminatory employment action, the Court assumes that plaintiff has met her burden on the prima facie case for her claim of pregnancy and race discrimination. Thus, the Court must consider whether defendant has set forth a non-pretextual reason for taking adverse action. An employer may take an adverse employment action for a bad reason or a reason based on erroneous facts so long as the action is not for a discriminatory reason. Dorman v. Webster Central Sch. Dist., 576 F. Supp. 2d 426, 433 (W.D.N.Y. 2008).

Defendant asserts that plaintiff legitimately received written warnings based on her tardiness; was properly informed that she needed to tell her supervisor where she was during work hours because the supervisor or a client might need to discuss a case with her; was not assigned a full caseload because it was the office policy to assign new trainees only intake applications until the trainee demonstrated an ability to handle a full caseload; was denied overtime because she was a new employee who did not have a full case load; was told to remove a religious quote from the outside of her cubicle based on building guidelines prohibiting postings on walls outside of cubicles; received poor performance appraisals because her work was below average; and was terminated due to her poor performance resulting in two consecutive unsatisfactory performance appraisals.

Plaintiff attacks defendant's asserted reasons for its employment action by pointing out that she was the only one in her training class who did not receive a full caseload after training; that she observed disparate treatment between her and

10

Caucasian workers in regard to discipline for tardiness, absences, and posting on the cubicle walls; and that her training reviews were all positive.

Conclusory, self-serving assertions cannot alone defeat defendant's legitimate business reasons for its employment decisions. Boata v. Pfizer, Inc., 2013 WL 432585, *3 (S.D.N.Y. 2013). Although plaintiff may have received a positive review during her training by Cheryl Disaroon, who trained plaintiff for twelve days, such review is irrelevant to her actual employment performance and her supervisor's appraisals of her job performance.

She also points to testimony by two female minority employees in Creatore's unit who claim that Creatore favored Caucasian workers. However, review of the deposition testimony indicates that both employees made only vague statements that Creatore favored Caucasians or had difficulty managing individuals in the unit. Neither testified to specific instances of disparate treatment comparable to that alleged by plaintiff. Potential comparators "must have a situation sufficiently similar" to that of plaintiff to support an inference of discriminatory treatment. McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001). This evidence fails to raise an inference of pretext.

Plaintiff also relies on deposition testimony of Joan Massey, an African-American and union representative, and Sarah Bradley, an African-American employee who had never worked with Creatore. Massey stated that Creatore referred to individuals transferred from the Norwalk office as "you people" and indicated that she thought such individuals were not used to being supervised. Plaintiff maintains that Bradley had heard negative comments about people who worked at the Norwalk DSS office. Plaintiff maintains that such testimony gives rise to inference of discrimination because

11

the Norwalk office was predominantly African-American. However, Massey's testimony indicates that Norwalk was composed of fifty percent minorities and fifty percent non-minorities, and that Creatore's comment meant that the Norwalk office "did things a little differently." Neither Massey's nor Bradley's testimony concerning the Norwalk office indicates that defendant's legitimate business reasons are pretextual for a discriminatory animus based on plaintiff's pregnancy or her race.[2] Accordingly, this evidence does not raise an inference of pretext to defeat summary judgment.

In her complaint, plaintiff alleges that she was instructed not to associate with minorities. However, plaintiff's statement of facts indicates that Creatore told plaintiff "not to pick up any bad habits when she was seen talking to other minority workers." In a written statement, plaintiff states that she believed that Creatore's action was "racist and stereotypical." Creatore's comment appears to be advice that is not related to an animus against plaintiff's race. Plaintiff's self-serving assertion that she believed Creatore was basing such advice on racist stereotypes is unsupported by any evidence in the record. Such comments are at most a stray remarks that cannot alone establish a discriminatory racial animus against plaintiff to raise an inference of pretext. Stray remarks, even if made by a decision maker, do not constitute sufficient evidence to make out a case of employment discrimination, unless there is other evidence of discrimination in the record. Hayes v. Compass Group USA, Inc., 343 F. Supp. 2d 112, 120 (D. Conn. 2004). Plaintiff has not adduced other evidence indicating discriminatory

---

[2]Bradley's testimony concerning comments of unnamed individuals is hearsay that cannot defeat summary judgment. Nyack v. Southern Connecticut State Univ., 424 F. Supp. 2d 370, 374 (D. Conn. 2006).

animus. Accordingly, the Court finds that plaintiff has failed to adduce evidence that refutes defendant's legitimate business reasons as pretextual for pregnancy or racial discrimination.

b. <u>Retaliation</u>

Plaintiff's retaliation claim also fails because she cannot refute defendant's legitimate business reasons for her termination.

A prima facie claim of retaliation requires plaintiff to show by a preponderance of evidence (1) that she engaged in protected activity, (2) that the employer was aware of the activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action.

The Court assumes for purposes of this ruling that plaintiff has satisfied the prima facie case. She has failed to refute with admissible evidence defendant's legitimate business reason for terminating her based on a record of poor performance.

On August 16, 2006, plaintiff received her probationary performance appraisal that indicated unsatisfactory performance. Plaintiff filed her CHRO complaint on May 24, 2007. Her performance appraisal on May 25, 2007 also rated her performance as unsatisfactory, and her Work Improvement Plan was discussed on May 30, 2007. On June 12, 2007, defendant received plaintiff's CHRO complaint. Two months later on July 27, 2007, Creatore issued another negative performance review of plaintiff's work. On August 9, 2007, plaintiff received notice that her employment was terminated.

Three months between defendant's notice of plaintiff's administrative filing and its termination may support an inference of a causal nexus. See <u>Manoharan v. Columbia Univ.</u>, 842 F.2d 590, 593 (2d Cir. 1988). However, when timing is the only

13

basis for a claim of retaliatory discharge and the gradual adverse employment action commenced prior to the administrative filing, the temporal proximity between the filing of an agency complaint and the alleged retaliatory termination does not support such an inference. <u>Slattery v. Swiss Reinsurance America Corp.</u>, 248 F.3d 87, 95 (2d Cir. 1991). Here, defendant had already taken employment action based on plaintiff's poor performance prior to her administrative filing. Accordingly, the Court finds that the temporal nexus between plaintiff's protected activity and her termination does not refute defendant's legitimate reasons for her termination. Summary judgment will be granted on this count.

### C. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [doc. #47] is GRANTED. The Clerk is instructed to close this case.

Dated this __12th___ day of August, 2013 at Bridgeport, Connecticut.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE